**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

JESSIE ALMOND,                              §
                                            §
              Plaintiff,                     §
                                            §
*versus*                                    §      CIVIL ACTION NO. 1:05-CV-009
                                            §
TRAVIS TARVER, KEVIN DELORD,                §
JOE JACKSON, JR., REGINALD GOINGS,          §
SEDONIA STEWART, REGINALD                   §
WALLACE, and RIZALINO REYES,                §
                                            §
              Defendants.                   §

## MEMORANDUM AND ORDER

Pending before the court is Defendant Kevin DeLord's ("DeLord") First Amended Motion for Summary Judgment (#40). Defendant seeks summary judgment on Jessie Almond's ("Almond") federal civil rights claims arising under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and state law tort claims for assault and battery and intentional infliction of emotional distress. Having reviewed the motion and supporting documents, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment is warranted in part.

I.    Background[1]

At the time of the alleged events giving rise to the instant action, Almond, a white male, was incarcerated by the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ"). Almond alleges that on January 8, 2003, Travis Tarver ("Tarver"), a correctional

---

[1] As the parties have provided neither deposition excerpts nor affidavits to the court in this case, the facts remain somewhat unclear. While Almond attached a purported personal journal detailing certain events pertinent to this case, this document is self-serving and constitutes inadmissible hearsay, which the court will not consider. *See* FED. R. EVID. 802.

officer, made a racial slur against him in the cafeteria of the LeBlanc Unit in Beaumont, Texas. Almond asserts that after he responded in a non-threatening manner, Tarver cursed at him and refused to listen to him.  Next, Almond claims that DeLord and Joe Jackson, Jr. ("Jackson"), fellow correctional officers, involved themselves in the altercation by threatening him and escorting him to a security room.  Although Almond allegedly attempted to apologize to defuse the situation, Tarver "continued to stand in a fighting stance" until pulled away by Jackson. According to Almond, DeLord then seized him by his shirt, slammed him through a sheetrock wall into an iron beam, and then threw him on the floor onto his back.  Jackson supposedly observed these events, but he left the room without further action.

Following the incident, Almond was treated briefly for his injuries—a contusion to his elbow and back pain—which were not deemed to be serious by TDCJ's medical staff.  In the ensuing months, however, Almond frequently complained of back pain, generating voluminous medical records as a result.  Though no structural damage to his back was apparent, the medical staff treated Almond for his pain, restricted his activities to a level suitable for his reported injuries, and provided him with various prescription pain killers and anti-inflammatory drugs, with allegedly mixed results.  Almond asserts that Tarver and DeLord continued to threaten and sexually harass him for "some time," during both this specific incident and throughout the duration of Almond's stay at the facility.  While mental health records show that Almond participated in several therapeutic counseling sessions beginning March 11, 2003, the records do not indicate that his confrontation with DeLord was a source of significant emotional distress. Rather, the records focus on Almond's concerns regarding his forthcoming parole, reintegration into society, and difficulty coping with stress.

2

Almond filed a Step 1 grievance related to his altercation with DeLord on January 10, 2003, which TDCJ marked as received on January 13, 2003.  On February 19, 2003, TDCJ notified Almond that it needed additional time to evaluate the grievance.  Sometime thereafter, TDCJ referred the matter to the Office of the Inspector General ("Inspector General") for further investigation and disposition.  No evidence suggests that Almond filed a Step 2 grievance to appeal this referral.  Almond wrote an additional letter, dated March 21, 2003, to the Inspector General, expressing his dissatisfaction at not being notified of the ultimate outcome of his grievance.  On April 16, 2003, TDCJ sent Almond a reply, stating that his case was still under active investigation.

During this period, TDCJ disciplined DeLord for the use of excessive force against Almond.  On January 21, 2003, penalties were assessed against DeLord, including a year-long probation, a three-week unpaid suspension, and demotion from the position of Lieutenant to Correctional Officer III.   On November 19, 2003, the Inspector General issued an Offense/Investigative Report, concluding that DeLord "grabbed Almond and shoved him into the sheetrock wall.  The force caused Almond to break the surface of the sheetrock wall."

Almond was released from the LeBlanc facility sometime after August 26, 2003, though the precise date is not disclosed in the available record.  Henderson County records indicate that Almond was jailed again on October 17, 2004, and that he subsequently returned to TDCJ custody on April 4, 2005.  He filed the instant action on January 7, 2005, alleging claims against DeLord, Tarver, Jackson, Reginald Goings ("Goings"), Sedonia Stewart ("Stewart"), Reginald A. Wallace ("Wallace"), and Rizalino Reyes ("Reyes").  On June 2, 2005, the court granted Goings's Motion to Dismiss for Failure to State a Claim.  Almond's claims against Tarver and Stewart were

3

dismissed on March 8, 2006, for failure to serve either defendant with process in violation of Federal Rule of Civil Procedure 4(m).  Almond abandoned his claims against Jackson in his Second Amended Complaint and his claims against Reyes and Wallace in his Third Amended Complaint.  Thus, only his claims against DeLord remain pending before the court.

II.    Analysis

A.    Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party seeking summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which he believes demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).  Where a defendant moves for summary judgment on the basis of an affirmative defense and, thus, bears the ultimate burden of persuasion, "it must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto."  *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000) (citing *Exxon Corp. v. Oxxford Clothes, Inc.*,

4

109 F.3d 1070, 1074 (5th Cir.), *cert. denied*, 522 U.S. 915 (1997)); *see Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  To warrant judgment in its favor, the movant "'"must establish beyond peradventure *all* of the essential elements of the defense."'"  *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (emphasis in original) (quoting *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot*, 780 F.2d at 1194)).

"A fact is '*material*' if it '*might affect* the outcome of the suit under governing law.'" *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original) (quoting *Anderson*, 477 U.S. at 248); *see Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005); *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001); *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999); *Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994).  "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis in original).  Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord EMCASCO Ins. Co. v. American Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cooper Tire & Rubber Co.*, 423 F.3d at 454; *Harken Exploration Co.*, 261 F.3d at 471; *Merritt-Campbell, Inc.*, 164 F.3d at 961.  The moving party, however, need not negate the elements of the nonmovant's case.  *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322 n.3 (citing FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003); *Rushing*, 185 F.3d at 505. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587); *see Riverwood Int'l Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996); *see Reeves*, 530 U.S. at 150; *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Estate of Smith*, 391 F.3d at 624; *Malacara*, 353 F.3d at 398; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *Harken Exploration Co.*, 261 F.3d at 471; *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951 (2001). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor. *See Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n.5 (1990) (citing *Anderson*, 477 U.S. at 255); *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004); *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003); *Martinez*, 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir.), *cert. denied*, 540 U.S. 815 (2003); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). The evidence is construed

6

"in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *accord Boudreaux*, 402 F.3d at 540; *Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Furthermore, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir. 1989)). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468-69. The nonmovant's burden is not satisfied by "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions," by speculation, by the mere existence of some alleged factual dispute, or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (citations omitted); *see Anderson*, 477 U.S. at 247-48; *Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540; *Wallace*, 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 541; *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322;

7

*EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

B.      Official Capacity Claims

In his Third Amended Complaint, Almond asserts claims against DeLord both in his individual capacity and in his official capacity as a TDCJ employee.  Almond alleges that DeLord, acting in both his individual and official capacity, violated his constitutional right to be free from excessive force under the Eighth Amendment to the United States Constitution.  DeLord argues that he is entitled to summary judgment against Almond's claims brought against him in his official capacity because he is protected by Texas's sovereign immunity and Eleventh Amendment immunity.

Under Texas law, a suit against a state employee in his or her official capacity is a suit against the State.  *See De Mino v. Sheridan*, 176 S.W.3d 359, 366 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Terrell ex rel. Estate of Terrell v. Sisk*, 111 S.W.3d 274, 280 (Tex. App.—Texarkana 2003, no pet.); *Nueces County v. Ferguson*, 97 S.W.3d 205, 215 n.11 (Tex. App.—Corpus Christi 2002, no pet.); *Denson v. TDCJ-ID*, 63 S.W.3d 454, 460 (Tex. App.—Tyler 1999, pet. denied) (citing *Pickell v. Brooks*, 846 S.W.2d 421, 425 (Tex. App.—Austin 1992, writ denied)).  A state agency, as an arm of the state, is shielded by the sovereign immunity available to the state government.  *See Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976); *May v. Nacogdoches Mem'l Hosp.*, 61 S.W.3d 623, 629 (Tex. App.—Tyler

2001, no pet.); *Brinkley v. Texas Lottery Comm'n*, 986 S.W.2d 764, 772 (Tex. App.—Austin 1999, no pet.); *University of Tex. Med. Branch v. Greenhouse*, 889 S.W.2d 427, 431 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *Whitehead v. University of Tex. Health Sci. Ctr.*, 854 S.W.2d 175, 180 (Tex. App.—San Antonio 1993, no writ).  It follows, then, that a public employee who works in a state agency and commits acts in his or her official capacity is protected by the doctrine of sovereign immunity.  *See Texas Parks & Wildlife Dep't v. E.E. Lowrey Realty, Ltd.*, 155 S.W.3d 456, 458 (Tex. App.—Waco 2004, pet. filed); *Estate of Terrell*, 111 S.W.3d at 280 (citing *Tex. Dep't of Health v. Rocha*, 102 S.W.3d 348, 353 (Tex. App.—Corpus Christi 2003, no pet.) (citations omitted)); *Whitehead*, 854 S.W.2d at 175 (citing *Esparza v. Diaz*, 802 S.W.2d 772, 778 (Tex. App.—Houston [14th Dist.] 1990, no writ)).  As an agency of the State of Texas, sovereign immunity applies to TDCJ and is available to all employees acting within their official capacities.  *See Estate of Terrell*, 111 S.W.3d at 280; *Whitehead*, 854 S.W.2d at 180.  Thus, DeLord, as a TDCJ employee, is entitled to assert the defense of sovereign immunity against Almond's claims against him in his official capacity.

Additionally, "[f]ederal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies."  *Vogt v. Board of Comm'rs of the Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir.), *cert. denied*, 537 U.S. 1088 (2002); *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72-73 (1996); *Hunt v. Smith*, 67 F. Supp. 2d 675, 682 (E.D. Tex. 1999).  The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.   Eleventh Amendment immunity extends to suits brought in federal court against a state by its own citizens as well as by citizens of another state or foreign country. *See Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004); *Lapides v. Board of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Pennhurst State Sch. & Hosp.*, 465 U.S. at 98-99; *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 418 (5th Cir. 2004); *Vogt*, 294 F.3d at 688; *United States v. Texas Tech Univ.*, 171 F.3d 279, 288-89 (5th Cir. 1999), *cert. denied*, 530 U.S. 1202 (2000); *Sherwinski v. Peterson*, 98 F.3d 849, 851 (5th Cir. 1996).   Absent waiver by the state of sovereign immunity or a valid congressional override, the Eleventh Amendment bars the institution of a damages action in federal court against a state or state instrumentality.   *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp.*, 465 U.S. at 99; *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240-41 (5th Cir. 2005); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 279 (5th Cir.), *cert. denied*, ___ U.S. ___, 126 S. Ct. 416 (2005); *Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 572-73 (5th Cir. 2002); *Vogt*, 294 F.3d at 688.

Under federal law, a suit against a public official in his or her official capacity is not a suit against the official but, rather, is a suit against the official's office.   *See Printz v. United States*, 521 U.S. 898, 930-31 (1997); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978); *McCarthy*, 381 F.3d at 413-14; *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996).   Thus, it is no different than a suit against the state itself.   *See Printz*, 521 U.S. at 930-31; *Will*, 491 U.S. at 71 (citing *Graham*, 473 U.S. at 165-66; *Monell*, 436 U.S. at 691 n.55).   The protection of the Eleventh Amendment is afforded to state officials because "a judgment against

a public servant 'in his official capacity' imposes liability on the entity that he represents." *Graham*, 473 U.S. at 169 (quoting *Brandon*, 469 U.S. at 471).

The United States Court of Appeals for the Fifth Circuit has held that "eleventh amendment immunity is a jurisdictional issue that 'cannot be ignored, for a meritorious claim to that immunity deprives the court of subject matter jurisdiction of the action.'" *McDonald v. Board of Miss. Levee Comm'rs*, 832 F.2d 901, 906 (5th Cir. 1987) (quoting *Crane v. Texas*, 759 F.2d 412, 415 (5th Cir.), *cert. denied*, 474 U.S. 1020 (1985)); *accord Jefferson v. Louisiana State Supreme Court*, 46 F. App'x 732, No. 01-31275, 2002 WL 1973897, at *1 (5th Cir. Aug. 9, 2002); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 465-66 (5th Cir. 1999).  As the Fifth Circuit explained in *Clay v. Texas Women's Univ.*:

> The eleventh amendment clearly interposes a jurisdictional bar to suits against a state by private parties who seek monetary relief from the state in the form of compensatory damages, punitive damages, or monetary awards in the nature of equitable restitution, and also to suits against a state agency or state official when the monied award is to be paid from the state treasury.

728 F.2d 714, 715 (5th Cir. 1984).  Accordingly, the Eleventh Amendment deprives the court of jurisdiction over Almond's official capacity claims against DeLord.

Moreover, in the context of actions brought under 42 U.S.C. § 1983, a state is not considered a "person" against whom a claim for money damages may be asserted under the statute.  *See Lapides*, 535 U.S. at 617 (citing *Will*, 491 U.S. at 64); *accord Caffey v. Johnson*, 883 F. Supp. 128, 132 (E.D. Tex. 1995).  Hence, while state officials literally are persons, if sued in their official capacities, they are not deemed to be "persons" amenable to suit for damages under § 1983.  *See Will*, 491 U.S. at 71.  Therefore, a § 1983 suit seeking damages brought against a

state official in his official capacity is foreclosed.  Thus, Almond may not sue DeLord in his official capacity for damages under § 1983.

Almond has not advanced any theory of waiver or congressional override of Texas's sovereign immunity.  *See Graham*, 473 U.S. at 169.  Consequently, Almond's claims against DeLord in his official capacity must fail, as sovereign immunity as well as Eleventh Amendment immunity defeat the court's jurisdiction.  *See id.*; *County of Cameron*, 80 S.W.3d at 554. Moreover, DeLord is not amenable to suit in his official capacity under § 1983.  *See Will*, 491 U.S. at 71.  Accordingly, summary judgment is warranted with respect to Almond's federal and state law claims against DeLord in his official capacity.

C.      Exhaustion of Administrative Remedies

DeLord contends that Almond's claims under the Civil Rights Act of 1871, 42 U.S.C. § 1983, must be dismissed for failure to exhaust administrative remedies.  The Prison Litigation Reform Act of 1996 ("PLRA") mandates that "[n]o action shall be brought with respect to prison conditions" under § 1983 "by a prisoner confined in any jail, prison, or any other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *accord Woodford v. Ngo*, ___ U.S. ___, ___, 126 S. Ct. 2378, 2382-83 (2006); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "The PLRA strongly disfavors continuing relief through the federal courts; indeed, its 'fundamental purpose' was to extricate them from managing state prisons."  *Guajuardo v. Texas Dep't of Criminal Justice*, 363 F.3d 392, 394 (5th Cir. 2004).

12

Under the PLRA, prisoners must exhaust all available administrative remedies "irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 (2001); *accord Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir. 2003) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)); *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003). If, prior to filing a § 1983 claim, "a prisoner has not exhausted all available administrative remedies, dismissal is appropriate." *Alexander*, 351 F.3d at 630; *accord Nelson v. Campbell*, 541 U.S. 637, 650 (2004); *Johnson*, 385 F.3d at 523. When the record before the district court is incomplete, however, "'lack of admissible evidence in the record does not form the basis for dismissal.'" *Days*, 322 F.3d at 866-67 (quoting *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), *cert. denied*, 526 U.S. 1133 (1999)).

As defined by the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Therefore, the administrative exhaustion requirements of the PLRA apply only to § 1983 suits brought by those who are imprisoned, incarcerated, or detained at the time their action is filed. *See Janes v. Hernandez*, 215 F.3d 541, 543 (5th Cir. 2000), *cert. denied*, 531 U.S. 1113 (2001); *accord Norton v. City of Marietta*, 432 F.3d 1145, 1150-51 (10th Cir. 2005); *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005); *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004); *Cox v. Mayer*, 332 F.3d 422, 424-25 (6th Cir. 2003); *Ahmed v. Dragovich*, 297 F.3d 201, 210 n.10 (3d Cir. 2002); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002).

Pursuant to legislative mandate, TDCJ has implemented an inmate grievance plan.  *See* 37 TEX. ADMIN. CODE ANN. § 283.3 (West 2006); *Days*, 322 F.3d at 865 n.2 (quoting *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998)); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999).  The inmate grievance procedure consists of a two-step process outlined in TDCJ's Offender Orientation Handbook, which is distributed to inmates upon their placement within the corrections system.  *See* TEXAS DEPARTMENT OF CRIMINAL JUSTICE, OFFENDER ORIENTATION HANDBOOK (2002); *see also* TEXAS DEPARTMENT OF CRIMINAL JUSTICE, OFFENDER ORIENTATION HANDBOOK (2004), *available at* http://www.tdcj.state.tx.us/ publications/cid/offendorienthbknov04.pdf.  "The Step 1 grievance, which must be filed within fifteen days of the complained-of incident, is handled within the prisoner's facility."  *Johnson*, 385 F.3d at 515; *accord Teixeira v. Cockrell*, No. SA-03-CA-0033-RF, 2003 WL 22143273, at *3 (W.D. Tex. Jul. 17, 2003); *see also Wendell*, 162 F.3d at 891.  "After an adverse decision at Step 1, the prisoner has ten days to file a Step 2 grievance, which is handled at the state level."  *Johnson*, 385 F.3d at 515; *accord Wendell,* 162 F.3d at 891.  "[A] prisoner must pursue a grievance through both steps for it to be considered exhausted."  *Johnson*, 385 F.3d at 515; *see also Wright*, 260 F.3d at 358.

The PLRA's exhaustion requirement is, however, "not jurisdictional and may be subject to certain defenses such as waiver, estoppel, or equitable tolling."  *See id.* at 358 n.2 (citing *Underwood*, 151 F.3d at 295-96); *accord Days*, 322 F.3d at 866.  Moreover, a prisoner need only exhaust those administrative remedies that are available.  *See* 42 U.S.C. § 1997e(a); *Days*, 322 F.3d at 866.  The Fifth Circuit has explained that remedies are available where they are accessible and "'personally obtainable.'"  *Id.* at 867 (quoting WEBSTER'S NEW INT'L DICTIONARY, 150 (3d ed. 1981)).

14

The record reflects that Almond was incarcerated in the Henderson County Jail on January 7, 2005, the date on which he filed this lawsuit, thus triggering application of the PLRA. *See* 42 U.S.C. § 1997e(h); *Berry v. Kerik*, 366 F.3d 85, 87-88 (2d Cir. 2004). Although the record is incomplete, the evidence before the court indicates that Almond was likely released from state custody shortly after August 26, 2003. The Inspector General's investigative report was not issued until November 19, 2003, nearly three months later. Before his release, Almond wrote to the Inspector General on March 21, 2003, inquiring about his grievance, and received a response on April 16, 2003, indicating that his grievance was still under investigation. DeLord argues that Almond's claims have not been exhausted because he failed to file a Step 2 grievance appealing the outcome of his Step 1 grievance. While Almond apparently never appealed TDCJ's decision to refer the matter to the Inspector General for further investigation, TDCJ's "action" was neither adverse nor a final disposition of his original grievance, leaving nothing for Almond to appeal via further administrative proceedings prior to his initial release.

Almond was reincarcerated on October 17, 2004, approximately eleven months after the issuance of the Inspector General's report. He was not returned to TDCJ custody until an additional 170 days had elapsed. Given this sequence of events, requiring Almond to have resumed the exhaustion process would have been impracticable, especially as Almond filed this lawsuit on January 7, 2005, prior to returning to TDCJ custody. He complied with prison grievance procedures to the extent possible until they were no longer "personally obtainable." *Days*, 322 F.3d at 866. In this instance, denying Almond access to the courts would be particularly inequitable, as TDCJ's own delay in processing his grievance led to the investigation not being concluded until after his release date.

15

Additionally, the grievance was resolved in Almond's favor, rendering further exhaustion unnecessary, as he does not request injunctive relief in his Third Amended Complaint.  *See Thornton v. Snyder*, 428 F.3d 690, 696-97 (7th Cir. 2005), *cert. denied*, ___ U.S. ___, 128 S. Ct. 2862 (2006) (citing *Booth*, 532 U.S. at 734-36) (holding that a prisoner need not appeal a favorable resolution to his grievance to satisfy the PLRA's exhaustion requirements); *Johnson*, 385 F.3d at 515 (mandating that a prisoner appeal any adverse grievance determination to exhaust administrative remedies); *Abney v. McGinnis*, 380 F.3d 663, 668-69 (2d Cir. 2004) (determining that a prisoner need not necessarily appeal a favorable grievance ruling); *Sorrells v. Correctional Officers*, 245 F.3d 790, No. 00-40885, 2000 WL 1910126, at *1 (5th Cir. Dec. 19, 2000) (establishing that a prisoner must appeal a partially favorable outcome to a Step 1 grievance where further injunctive relief is sought in his federal complaint).  Here, Almond adequately exhausted TDCJ's grievance procedures to the extent they were personally obtainable by him and provided an avenue for relief.  Hence, DeLord's position that Almond's claims should be dismissed for failure to exhaust administrative remedies must be rejected.  *See Days*, 322 F.3d at 863.

      D.    The Civil Rights Act of 1871

         1.    General Framework

The Civil Rights Act of 1871, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.  *See Inyo County v. Paiute-Shoshone Indians of the Bishop Cmty.*, 538 U.S. 701, 708 (2003); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994); *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005).  It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the

United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879-80 (5th Cir. 2004); *Felton v. Polles*, 315 F.3d 470, 479 (5th Cir. 2002); *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir.), *cert. denied*, 519 U.S. 818 (1996).

There are three elements to establish liability in a § 1983 action.  *See Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citing *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir. 1986)).  To prevail, the plaintiff must show "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor."  *Id.*; *see American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir.), *cert. denied*, 543 U.S. 829 (2004).  A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  *See id.*; *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

Thus, for Almond to recover, he must show that DeLord deprived him of a right guaranteed by the Constitution or the laws of the United States.  *See Daniels*, 474 U.S. at 329-31; *Baker*, 443 U.S. at 139; *Hernandez*, 380 F.3d at 879-80; *Victoria W.*, 369 F.3d at 482;

17

*Rosborough v. Management & Training Corp.*, 350 F.3d 459, 460 (5th Cir. 2003).  "[T]he first step in a § 1983 analysis is to identify the specific constitutional right involved." *Oliver v. Scott*, 276 F.3d 736, 744 n.10 (5th Cir. 2002) (citing *Baker*, 443 U.S. at 140).  "'Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.'" *Victoria W.*, 369 F.3d at 482 (quoting *Baker*, 443 U.S. at 146); *accord Town of Castle Rock v. Gonzales*, ___ U.S. ___, ___, 125 S. Ct. 2796, 2810 n.15 (2005); *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994).  Almond must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference—not the result of mere negligence.  *See Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Daniels*, 474 U.S. at 328; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Hernandez*, 380 F.3d at 882.  The negligent deprivation of life, liberty, or property is not a constitutional violation.  *See McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003); *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir.), *cert. denied*, 506 U.S. 973 (1992).

2. <u>Excessive Force under the Eighth Amendment</u>

In the case at bar, DeLord does not dispute that, during the alleged incident, he was acting in his capacity as a state correctional offer or that his actions were under color of state law.  *See Victoria W.*, 369 F.3d at 482.  Hence, to survive summary judgment on his § 1983 claim, Almond need only proffer sufficient evidence from which the existence of a constitutional violation could be inferred and that DeLord is not immune from liability.  *See id.*  Almond maintains that DeLord violated his constitutional rights under the Eighth Amendment by using excessive force against

18

him.   The application of force is considered excessive by constitutional standards where it is "grossly disproportionate to the need for action and inspired by malice." *Valencia v. Wiggins*, 981 F.2d 1440, 1447 (5th Cir. 1993)*, cert. denied*, 509 U.S. 905 (1993); *accord Petta v. Rivera*, 143 F.3d 895, 902 (5th Cir. 1998).   The Supreme Court has made clear that the use of excessive force against inmates by prison officials involving ""the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."'" *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977))).

For excessive force claims brought by prisoners and pretrial detainees, "'[t]he core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Baldwin v. Stalder*, 137 F.3d 836, 838 (5th Cir. 1998) (quoting *Hudson*, 503 U.S. at 7); *accord Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *Rankin v. Klevenhagen*, 5 F.3d 103, 107 (5th Cir. 1993); *Bender v. Brumley*, 1 F.3d 271, 277 (5th Cir. 1993).   Because the motive of the officer is often indiscernible, the trier of fact must base its determination on relevant objective factors suggestive of intent.   *See id.* at 278 n.6.   Some of the factors that may be considered in determining whether unnecessary and wanton infliction of pain was utilized in violation of a prisoner's Eighth Amendment right to be free from cruel and unusual punishment include:

(1)     the extent of the injury suffered;

(2)     the need for the application of force;

(3)     the relationship between the need and the amount of force used;

(4)      the threat reasonably perceived by the responsible official; and

(5)      any efforts made to temper the severity of a forceful response.

*See Hudson*, 503 U.S. at 7; *accord Whitley*, 475 U.S. at 321 (1986); *Gomez*, 163 F.3d at 923; *Baldwin*, 137 F.3d at 839; *Rankin*, 5 F.3d at 107; *Bender*, 1 F.3d at 278 n.6.  In addition, "the finder of fact must keep in mind that prison officials 'may have had to act quickly and decisively.'"  *Baldwin*, 137 F.3d at 840 (quoting *Valencia*, 981 F.2d at 1446).  "Accordingly, they are entitled to wide-ranging deference."  *Id.*

"'[T]he Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."'"  *Id.* at 839 (quoting *Siglar*, 112 F.3d at 193 (quoting *Hudson*, 503 U.S. at 7)); *accord Gomez*, 163 F.3d at 923.  "[A]n Eighth Amendment violation does not occur with 'every malevolent touch by a prison guard.'"  *Baldwin*, 137 F.3d at 839 (quoting *Hudson*, 503 U.S. at 9).  Under a federal statute enacted as part of the PLRA:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).  Hence, mere verbal abuse by a prison guard does not give rise to a cause of action under § 1983.  *See Siglar*, 112 F.3d at 193; *Bender*, 1 F.3d at 274 n.4.

In 1992, the Supreme Court rejected the Fifth Circuit's previous requirement that a "significant injury" be shown to establish a viable excessive force claim.  *See Hudson*, 503 U.S. at 9; *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.), *clarified on reh'g*, 186 F.3d 633 (5th Cir. 1999)).  Thus, the absence of serious injury, while relevant to the inquiry, does not preclude relief.  *See Hudson*, 503 U.S. at 7; *Baldwin*, 137 F.3d at 839 (5th Cir. 1998); *Siglar*, 112 F.3d

at 193.   Nevertheless, the injury must be more than *de minimis*.   *See Hudson*, 503 U.S. at 10; *Williams*, 180 F.3d at 703; *Baldwin*, 137 F.3d at 839; *Siglar*, 112 F.3d at 193; *Knight v. Caldwell*, 970 F.2d 1430, 1432-33 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993).   In determining whether an inmate's injury is sufficiently severe to afford a claim for relief, a court should consider factors such as whether the physical force was applied in a manner "'calculated to produce real physical harm'" and whether the inmate subsequently sought treatment for his injuries.   *Edwards v. Stewart*, 37 F. App'x 90, No. 01-30997, 2002 WL 1022015, at *2 (5th Cir. May 10, 2002) (quoting *Gomez*, 163 F.3d at 924) (citing *Siglar*, 112 F.3d at 193).

At least for summary judgment purposes, DeLord has not contested Almond's recitation of the events underlying this lawsuit; indeed, TDCJ's own records bear out many of Almond's assertions.   The undisputed evidence indicates that, while in a room with three other correctional officers, DeLord slammed Almond into a sheetrock wall with sufficient force to break the surface of the wall.   There is no evidence that Almond physically threatened DeLord or any other TDCJ employee, as TDCJ's internal investigation concluded that Almond and Tarver merely engaged in a "verbal altercation."   While the absence in the record of any deposition testimony or affidavits of eyewitnesses clouds the precise circumstances of the altercation, there remains a genuine issue of material fact concerning Almond's excessive force claim based on DeLord's unexplained, seemingly unwarranted, actions toward Almond.   *See Hudson*, 503 U.S. at 7; *Gomez*, 163 F.3d at 924; *Baldwin*, 137 F.3d at 839; *Rankin*, 5 F.3d at 107; *Bender*, 1 F.3d at 278 n.6.

DeLord contends, however, that any physical injury suffered by Almond was *de minimis* and, therefore, not actionable.   *See Hudson*, 503 U.S. at 10.   The medical evidence is conflicting. While a January 9, 2003, health evaluation form mentions only a right elbow contusion, other

documents indicate that Almond complained of back pain for the first time on the very day of the altercation and that he persistently and frequently requested treatment for purportedly severe back pain for months after the alleged incident.  Although Almond was already receiving prescription pain medication for a knee ailment, TDCJ's medical staff changed his prescription upon his complaint that the prescription did not effectively ease his back pain and continued to prescribe pain medication to him after he ceased complaining about his knee problem.  A January 23, 2003, medical evaluation noted "muscle tenderness on the left parasternal area[,] lower thoracic[,] and upper lumbar area."  An x-ray taken on January 31, 2003, however, failed to reveal abnormalities in either his thoracic or lumbar spine.  TDCJ healthcare employees regarded Almond as having full range of motion in his back on January 9, 2003, but not on February 13, 2003, or March 18, 2003.

After considering factors such as Almond's repeated efforts to obtain medical treatment for what he subjectively described as severe back pain, TDCJ's treatment of his back injury with pain medication, the arguably violent nature of DeLord's alleged action, and the documentation, albeit limited, lending credence to the legitimacy of Almond's complaints of long-term back pain, the court concludes that a reasonable jury could find that Almond suffered more than *de minimis* injury, thus precluding summary judgment on this ground.  *See Edwards*, 2002 WL 1022015, at *2 (citing *Gomez*, 163 F.3d at 924; *Siglar*, 112 F.3d at 193).

### 3.   Qualified Immunity

Nevertheless, DeLord asserts that he is entitled to qualified immunity from Almond's § 1983 claims brought against him in his individual capacity.  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975)); *see Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005); *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005); *Beltran v. City of El Paso*, 367 F.3d 299, 302-03 (5th Cir. 2004); *Felton*, 315 F.3d at 477; *Bazan*, 246 F.3d at 488; *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001). "An official acts within his discretionary authority when he performs nonministerial acts within the boundaries of his official capacity." *Tamez v. City of San Marcos*, 118 F.3d 1085, 1091-92 (5th Cir. 1997), *cert. denied*, 522 U.S. 1125 (1998) (citing *Cronen v. Texas Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992)); *accord Beltran*, 367 F.3d at 302-03.

> The qualified or "good faith" immunity doctrine was established to reconcile two competing interests. One interest is the compensation of persons whose federally protected rights have been violated. Opposing this is the fear that personal liability will inhibit public officials in the discharge of their duties. Qualified immunity has therefore been recognized to protect "all but the plainly incompetent or those who knowingly violate the law."

*Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Qualified immunity is available to defendant officials in suits arising under § 1983 and is an immunity from suit, extending beyond a defense to liability to include all aspects of civil litigation, including discovery. *See McClendon*, 305 F.3d at 323; *Heitschmidt v. City of Houston*, 161 F.3d 834, 840 (5th Cir. 1998); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of

litigation.'" *Davis*, 406 F.3d at 380 (quoting *Mitchell*, 472 U.S. at 526); *see Saucier v. Katz*, 533

U.S. 194, 200 (2001); *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003).

Because it is "an affirmative defense, the defendant must both plead and establish his

entitlement to immunity." *Tamez*, 118 F.3d at 1091 (citing *Gomez v. Toledo*, 446 U.S. 635, 640

(1980); *Cronen*, 977 F.2d at 939); *see Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Harlow*, 457

U.S. at 815.  For summary judgment purposes, however, "a defendant asserting immunity is not

required to establish the defense beyond peradventure, as he would have to do for other affirmative

defenses." *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir.), *cert. denied*, 540 U.S. 826 (2003)

(quoting *Beck v. Texas State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir.), *cert. denied*,

531 U.S. 871 (2000)).  "It is sufficient that the movant in good faith pleads that [he] is entitled to

absolute or qualified immunity." *Id.*  The Fifth Circuit has explained:

> "Where a defendant pleads qualified immunity and shows he is a governmental
> official whose position involves the exercise of discretion, the *plaintiff then has the*
> *burden* 'to rebut this defense by establishing that the official's allegedly wrongful
> conduct violated clearly established law.'  We do 'not require that an official
> demonstrate that he did not violate clearly established federal rights; *our precedent*
> *places that burden upon plaintiffs.*'"

*Felton*, 315 F.3d at 477 (emphasis in original) (quoting *Pierce v. Smith*, 117 F.3d 866, 871-72

(5th Cir. 1997) (internal citations omitted) (quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th

Cir. 1992))); *accord Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *McCully*, 406 F.3d

at 380; *Bazan*, 246 F.3d at 489-90.

"Whether a government official is entitled to qualified immunity 'generally turns on the

"objective reasonableness of the action" assessed in light of the legal rules that were "clearly

established" at the time it was taken.'" *Johnston*, 14 F.3d at 1059 (quoting *Texas Faculty Ass'n*

*v. University of Tex. at Dallas*, 946 F.2d 379, 389 (5th Cir. 1991) (quoting *Anderson v.*

*Creighton*, 483 U.S. 635, 639 (1987))); *see Brosseau v. Haugen*, 543 U.S. 194, 198 (2004);

*Siegert*, 500 U.S. at 231; *Mitchell*, 472 U.S. at 530; *Harlow*, 457 U.S. at 818; *Atteberry*, 430

F.3d at 253; *Haggerty v. Texas S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *McClendon*, 305

F.3d at 327; *Petta*, 143 F.3d at 899-900.   A defendant "is entitled to qualified immunity unless

he violated a constitutional right that was clearly established at the time of his conduct." *Blackwell*

*v. Barton*, 34 F.3d 298, 302-03 (5th Cir. 1994) (citing *Pfannstiel v. City of Marion*, 918 F.2d

1178, 1183 (5th Cir. 1990)); *see Saucier*, 533 U.S. at 201; *Stidham v. Texas Comm'n on Private*

*Sec.*, 418 F.3d 486, 490 (5th Cir. 2005); *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir.

2005); *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994).   In considering a claim of

qualified immunity, the court must make a two-pronged inquiry:

> "The bifurcated test for qualified immunity is quite familiar:  (1) whether the
> plaintiff has alleged a violation of a clearly established constitutional [or federal
> statutory] right; and, (2) if so, whether the defendant's conduct was objectively
> unreasonable in the light of the clearly established law at the time of the incident."

*Felton*, 315 F.3d at 477 (quoting *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998));

*accord Michalik*, 422 F.3d at 257; *Tarver*, 410 F.3d at 750; *Porter v. Ascension Parish Sch. Bd.*,

393 F.3d 608, 613-14 (5th Cir. 2004), *cert. denied*, 544 U.S. 1062 (2005); *Hernandez*, 380 F.3d

at 879; *Beltran*, 367 F.3d at 303; *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001).

   "The first prong requires determining 'whether the plaintiff has alleged the deprivation of

an *actual* constitutional [or statutory] right,'—that is, a right '*clearly established* . . . under . . .

*currently applicable* . . . standards.'" *Felton*, 315 F.3d at 477 (emphasis in original) (quoting

*Conn*, 526 U.S. at 290; *Hare*, 135 F.3d at 325-26); *accord Michalik*, 422 F.3d at 257.   "Only if

the plaintiff has done so should the court proceed to the second prong." *Felton*, 315 F.3d at 477.

A legal right is clearly established if the contours of the right are sufficiently clear that reasonable

officials would understand that their conduct violates that right.  *See Brosseau*, 543 U.S. at 198-99; *Anderson*, 483 U.S. at 640; *Atteberry*, 430 F.3d at 256; *Alexander v. Eeds*, 392 F.3d 138, 146-47 (5th Cir. 2004); *Kinney v. Weaver*, 367 F.3d 337, 367 (5th Cir.), *cert. denied*, 543 U.S. 872 (2004); *Johnston*, 14 F.3d at 1059.

In this instance, Almond has adduced evidence of sufficient facts, if believed by a jury, to support a claim for excessive force.  At the time of the incident in question, Almond, as an inmate, had a clearly established constitutional right to be free from the use of excessive force by a correctional officer under the Eighth Amendment's prohibition against cruel and unusual punishment.  *See Hudson*, 503 U.S. at 5-6; *Graham*, 490 U.S. at 394-95; *United States v. Daniels*, 281 F.3d 168, 179 (5th Cir.), *cert. denied*, 535 U.S. 1105 (2002); *Gomez*, 163 F.3d at 923-24.  Consequently, Almond has overcome the first hurdle to defeating DeLord's entitlement to qualified immunity.

Even though Almond has proffered sufficient evidence to create a fact issue as to whether his constitutional rights were violated, "'if reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.'"  *Blackwell*, 34 F.3d at 303 (quoting *Pfannstiel*, 918 F.2d at 1183); *accord Haggerty*, 391 F.3d at 655 (citing *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997)); *Johnston*, 14 F.3d at 1059; *see also Malley*, 475 U.S. at 341; *Cantu v. Rocha*, 77 F.3d 795, 806 (5th Cir. 1996).  "The second prong 'focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and/or of the factual setting in which it took place.'"  *Felton*, 315 F.3d at 478 (quoting *Pierce*, 117 F.3d at 872).  "A 'defendant's acts are . . . objectively reasonable unless *all* reasonable officials in the defendant's circumstances

would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff.'"  *Id*. (quoting *Thompson*, 245 F.3d at 457 (emphasis in original)).

The evidence before the court suggests that DeLord slammed Almond into a sheetrock wall with sufficient force to damage the wall itself.  While DeLord is entitled to qualified immunity if reasonable officials could disagree as to the legality of his actions at the time of the incident, the underlying factual disputes are still resolved in favor of Almond, the nonmoving party.  *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 449-50 (5th Cir. 1998); *see also Anderson*, 483 U.S. at 640-41.  Absent even a hint in the record of physical aggression by Almond, especially in a situation in which three officers were available to deal with a single inmate well after an original verbal confrontation had ended, the court cannot conclude as a matter of law that "reasonable public officials could differ on the lawfulness" of DeLord's actions.  *Blackwell*, 34 F.3d at 303.  Accordingly, DeLord is not entitled to summary judgment on the basis of qualified immunity.

E.     State Law Claims

1.     Assault and Battery

Almond claims that DeLord's actions constitute assault and battery under state law.  In Texas, the elements of a cause of action for assault and battery are the same in civil law as they are in criminal law.  *See Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 649 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Green v. Industrial Specialty Contractors, Inc.*, 1 S.W.3d 126, 134 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Stokes v. Puckett*, 972 S.W.2d 921, 925 (Tex. App.—Beaumont 1998, pet. denied) (citing *LaBella v. Charlie Thomas, Inc.*, 942

S.W.2d 127, 138 (Tex. App.—Amarillo 1997, writ denied)).   Both assault and battery are consolidated into a single section of the Texas Penal Code, labeled "assault."   *See* Tex. Pen. Code Ann. § 22.01 (Vernon 2005); *Baribeau v. Gustafson*, 107 S.W.3d 52, 60 (Tex. App.—San Antonio 2003, pet. denied), *cert. denied*, 543 U.S. 871 (2004).   A person commits an assault if he:  "(1) intentionally, knowingly, or recklessly causes bodily injury to another; (2) intentionally or knowingly threatens another with imminent bodily injury; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative."   *Hall*, 177 S.W.3d at 649-50 (citing § 22.01(a)); *accord Gibbins v. Berlin*, 162 S.W.3d 335, 340 (Tex. App.—Fort Worth 2005, no pet.); *Morgan v. City of Alvin*, 175 S.W.3d 408, 418 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *see also Green*, 1 S.W.3d at 134; *Stokes*, 972 S.W.2d at 925; *LaBella*, 942 S.W.2d at 138.

Almond has proffered evidence suggesting that the purported attack by DeLord caused him to suffer injuries to his elbow and back.   Under the circumstances, a reasonable jury could infer the "intentionally, knowingly, or recklessly" requirement for a finding of assault from the facts of this case, as detailed above.   Hence, Almond has raised a genuine issue of material fact concerning each necessary element of assault and battery under at least one theory of the tort under Texas law.   *See* Tex. Pen. Code Ann. § 22.01(a)(1).

## 2.    Intentional Infliction of Emotional Distress

Almond further contends that DeLord is liable to him for intentional infliction of emotional distress.   In Texas, "intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies."   *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (citing *Hoffman-La Roche, Inc. v. Zeltwanger*, 144

S.W.3d 438, 447 (Tex. 2004)).  The tort was judicially recognized by the Texas Supreme Court to permit recovery in situations involving egregious behavior for which the victim would otherwise be unable to obtain redress.  *See Hoffman-La Roche, Inc.*, 144 S.W.3d at 447 (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)).  It was "never intended as an easier and broader way to pursue claims already protected by our expanding civil and criminal laws."  *Creditwatch, Inc.*, 157 S.W.3d at 818.  The availability of other remedies obviates the need for a separate tort for intentional infliction of emotional distress because there remains "no gap to fill."  *Id.* at 816.

Accordingly, when the legislature has provided a statutory cause of action for the same conduct or a separate remedy exists at common law, a plaintiff may not sue under a theory of intentional infliction of emotional distress.  *See id.*; *Hoffman-La Roche, Inc.*, 144 S.W.3d at 447; *accord Gonnering v. Blue Cross & Blue Shield of Tex.*, 420 F. Supp. 2d 660, 665 (W.D. Tex. 2006); *Johnson v. Blue Cross/Blue Shield of Tex.*, 375 F. Supp. 2d 545, 549 (N.D. Tex. 2005). Moreover, a plaintiff may not assert a claim for intentional infliction of emotional distress merely because of his inability to prevail on another theory of relief designed to address the gravamen of his complaint.  *See Creditwatch, Inc.*, 157 S.W.3d at 816.

Here, Almond has not adduced any admissible evidence in support of his claim for intentional infliction of emotional distress other than the evidence underlying his claims for excessive force under § 1983 and assault and battery under Texas common law.  Because § 1983 and the common law tort of assault are the appropriate avenues for redress of Almond's alleged injuries, his intentional infliction of emotional distress claim fails as a matter of law.  *See id.*; *Hoffman-La Roche, Inc.*, 144 S.W.3d at 447; *Moser v. Roberts*, 185 S.W.3d 912, 915-16 (Tex.

29

App.—Corpus Christi 2006, no pet.); *accord Fernandez v. San Antonio Hous. Auth.*, Civ. No. SA-05-CA-106-XR, 2006 WL 1280943, at *5 (W.D. Tex. May 8, 2006); *Johnson*, 375 F. Supp. 2d at 549-50; *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 632-33 (W.D. Tex. 2005).  Therefore, summary judgment is proper as to this claim.

### 3.   Official Immunity

Finally, DeLord maintains that Almond's tort law claims against him are barred under Texas law by the doctrine of official immunity.  Unlike sovereign immunity, which protects governmental entities, official immunity protects individual officials from liability.  *See DeWitt v. Harris County*, 904 S.W.2d 650, 652 (Tex. 1995); *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994).  "Official immunity . . . exists so government officials may remain free to exercise their duties without fear of damage suits:  suits which would consume their time and energy and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government."  *Jackson v. Stinnett*, 881 S.W.2d 498, 500 (Tex. App.—El Paso 1994, no writ); *see Ho v. University of Tex. at Arlington*, 984 S.W.2d 672, 689 (Tex. App.—Amarillo 1998, pet. denied); *Armendarez v. Tarrant County Hosp. Dist.*, 781 S.W.2d 301, 305 (Tex. App.—Fort Worth 1989, writ denied).  "The purpose of official immunity is to insulate the functioning of government from the harassment of litigation, not to protect erring officials." *Kassen*, 887 S.W.2d at 8 (citing *Westfall v. Erwin*, 484 U.S. 292, 295 (1988)); *accord Villasan v. O'Rourke*, 166 S.W.3d 752, 760 (Tex. App.—Beaumont 2005, pet. filed); *Perry v. Greanias*, 95 S.W.3d 683, 692 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

Under Texas law, "[g]overnment officials are entitled to immunity from suit arising from performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within

the scope of their authority." *Hart v. O'Brien*, 127 F.3d 424, 450 (5th Cir. 1997), *cert. denied*,

525 U.S. 1103 (1999) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994));

*see Tamez*, 118 F.3d at 1097; *Cantu*, 77 F.3d at 808; *Kassen*, 887 S.W.2d at 9; *Welch v. Milton*,

185 S.W.3d 586, 597 (Tex. App.—Dallas 2006, pet. filed); *City of San Angelo Fire Dep't v.*

*Hudson*, 179 S.W.3d 695, 702-03 (Tex. App.—Austin 2005, no pet.).  Official immunity is an

affirmative defense which places on the defendant the burden of establishing all its elements.  *See*

*Chambers*, 883 S.W.2d at 653; *Montgomery v. Kennedy*, 669 S.W.2d 309, 310-11 (Tex. 1984);

*Los Fresnos Consol. Indep. Sch. Dist. v. Southworth*, 156 S.W.3d 910, 916 (Tex. App.—Corpus

Christi 2005, pet. denied); *Morgan v. City of Alvin*, 175 S.W.3d 408, 420 (Tex. App.—Houston

[1st Dist.] 2004, no pet.).

　　　An act is discretionary under Texas law if it requires personal deliberation, decision, and

judgment.  *See Chambers*, 883 S.W.2d at 654; *City of San Angelo Fire Dep't*, 179 S.W.3d at 704;

*Harris County v. Ochoa*, 881 S.W.2d 884, 887 (Tex. App.—Houston [14th Dist.] 1994, writ

denied); *Esparza v. Diaz*, 802 S.W.2d 772, 779 (Tex. App.—Houston [14th Dist.] 1990, no writ).

"Discretionary functions receive protection, but ministerial duties do not." *Kassen*, 887 S.W.2d

at 9.  As the Texas Supreme Court explained in *Chambers*:

> Ministerial acts are those "[w]here the law prescribes and defines the duties to be
> performed with such precision and certainty as to leave nothing to the exercise of
> discretion or judgment . . . but where the act to be done involves the exercise of
> discretion or judgment, it is not to be deemed merely ministerial."  . . .  If an
> action involves personal deliberation, decision and judgment, it is discretionary;
> actions which require obedience to orders or the performance of a duty to which
> the actor has no choice, are ministerial.

883 S.W.2d at 654 (quoting *Rains v. Simpson*, 50 Tex. 495, 501 (1878)) (citations omitted); *see*

*Tamez*, 118 F.3d at 1097; *Kassen*, 887 S.W.2d at 9.

31

"An official acts in 'good faith' if any reasonably prudent officer could have believed that the conduct was consistent with the plaintiff's rights." *Cantu*, 77 F.3d at 808; *see Tamez*, 118 F.3d at 1097; *Chambers*, 883 S.W.2d at 656-57; *City of Beverly Hills v. Guevara*, 911 S.W.2d 901, 904-05 (Tex. App.—Waco 1995, no writ); *Texas Dep't of Pub. Safety v. Perez*, 905 S.W.2d 695, 699 (Tex. App.—Houston [14th Dist.] 1995, writ denied).  The test of good faith is one of objective legal reasonableness without regard to whether the government official involved acted with subjective good faith.  *See Hart*, 127 F.3d at 450; *Cantu*, 77 F.3d at 809; *Chambers*, 883 S.W.2d at 656.  To controvert an official's summary judgment proof of good faith, the plaintiff must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Chambers*, 883 S.W.2d at 657; *accord Guevara*, 911 S.W.2d at 904.  If officers of reasonable competence could disagree on the issue, immunity should be recognized.  *See Gallia v. Schreiber*, 907 S.W.2d 864, 869 (Tex. App.—Houston [1st Dist.] 1995, no writ.) (citing *Chambers*, 883 S.W.2d at 656-57).

An official is acting within the scope of his authority for immunity purposes when discharging duties generally assigned to that official, even though the official may be acting unlawfully.  *See Cantu*, 77 F.3d at 808; *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 424-25 (Tex. 2004); *Chambers*, 883 S.W.2d at 658.  Hence, an "officer acts within the scope of his authority if he discharges the duties generally assigned to him." *Tamez*, 118 F.3d at 1097.

DeLord has not satisfied his burden of proof with respect to any prong of Texas's three-part test.  DeLord has not adduced any evidence of TDCJ's policies governing the use of force at its facilities.  While DeLord may have been exercising discretionary authority in an effort to maintain discipline in the prison, his conclusory assertion in his motion for summary

32

judgment—without even an affidavit in support—is insufficient to establish as a matter of law that the alleged physical assault upon Almond occurred in connection with an exercise of permissible discretion.  *See McBride v. TDCJ-ID*, 964 S.W.2d 18, 23 (Tex. App.—Tyler 1997, no writ). Without such evidence, a reasonable jury could conclude that DeLord lacked discretion to engage in the alleged attack.  Similarly, the record is devoid of any evidence that DeLord was acting in good faith.  *See Zuniga v. Navarro & Assocs.*, 158 S.W.3d 663, 672 (Tex. App.—Corpus Christi 2005, pet. denied); *Clement v. City of Plano*, 26 S.W.3d 544, 551-52 (Tex. App.—Dallas 2000, no pet.); *McBride*, 964 S.W.2d at 23; *Murillo v. Garza*, 881 S.W.2d 199, 201-02 (Tex. App.—San Antonio 1994, no writ).  Certainly, the court cannot conclude as a matter of law that an officer of reasonable competence would have believed DeLord's conduct to be consistent with Almond's rights.

Finally, it is unclear whether DeLord was acting within the scope of his authority. Although the mere fact that his activity may have been unlawful does not render his actions outside the scope of his authority, DeLord has not proffered evidence tending to prove that his actions were pursuant to any "duty assigned to him."  *Tamez*, 118 F.3d at 1097; *accord Ballantyne*, 144 S.W.3d at 424-25.  Although it could be assumed that, as a correctional officer, DeLord necessarily was obliged to maintain order and discipline among inmates at the LeBlanc facility, DeLord has not demonstrated that his particular responsibilities encompassed his use of force against Almond.  Thus, the existence of outstanding issues of material fact preclude summary judgment on the basis of official immunity.

III.     Conclusion

Accordingly, DeLord's Motion for Summary Judgment is granted in part.  All of Almond's claims against DeLord in his official capacity are defeated by the doctrines of sovereign and Eleventh Amendment Immunity, as well as the language of § 1983, and DeLord is entitled to summary judgment on these claims.  Summary judgment is likewise warranted with respect to Almond's intentional infliction of emotional distress claim under Texas law.  Genuine issues of material fact exist, however, regarding Almond's excessive force claim under § 1983 and his assault and battery claim under Texas common law, precluding summary judgment on these claims.

SIGNED at Beaumont, Texas, this 14th day of August, 2006.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE